# CASES DETERMINED

IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT FEBRUARY TERM, 1864.

~~~~~~~~~~~~~~~~

THE STATE, THE JERSEY CITY AND BERGEN POINT PLANK ROAD COMPANY, PROSECUTORS, v. JOHN B. HAIGHT, COLLECTOR.

1. A plank road company is in fact a turnpike company within the meaning of the tax law of 1854, (*Nix. Dig.* 851, ? 64,)* requiring " the personal estate of such company to be assessed in the township or ward in which the treasurer or other officer authorized to discharge the general pecuniary obligations of such company resides."

2. A plank road constructed by a private company and under legislative authority, and dedicated to public travel, with gates erected thereon for the collection of tolls, as a condition of such travel, may properly be termed a turnpike road, without regard to the material of which the surface of the road may be composed.

———

On *certiorari.* In matter of taxation.

In 1862, the prosecutors were assessed in Jersey City upon the amount of their capital stock. After a reduction, made by the commissioners of appeal, the amount of tax was $138.74.

The prosecutors seek to set aside this assessment, alleging that the whole of their capital stock is assessed and taxed in

*Rev., p.* 1153, ? 66.

Jersey City, while only a small part of their road, not exceeding one-fourteenth part of it, is situate in said city, the remainder being situate in the town of Bergen, and township of Bayonne; that the company had no office or place of business in Jersey City; that the tolls were all collected at toll houses outside the city; that only one of the directors lived in the city, and all the other directors, together with the treasurer, lived in another township. The prosecutors insist that their road is to be taken as a turnpike road, and to be taxed upon the same principle, under the act of 1854, and therefore cannot be taxed in Jersey City, but must be taxed in the township or ward where the treasurer resides.

Witnesses were examined by both parties, under an order of the court, in reference to the facts alleged.

For the prosecutors, *A. O. Zabriskie.*

For the defendant, *R. D. McClelland.*

The opinion of the court was delivered by

VAN DYKE, J. The road in question is some eight miles in length. Less than half a mile of this is in Jersey City, the remainder all being in the other townships. All the toll gates and toll houses of the company are in such other townships, and all their tolls are there collected, no part of them being collected in Jersey City. The president, who is one of the directors, resides in Jersey City. The other five directors reside in Bergen. The treasurer and secretary, being the same person, resides in Bergen, but has a law office in Jersey City, at which a considerable portion of the general business of the company is transacted, but the meetings sometimes occur at other places, the company having no office or place of business of their own in that city. Jersey City, however, has assessed and taxed this company on the full amount of their paid in capital, on the ground, as it is supposed, of that being the township or ward where the

company have their principal office, or as the one where the operations of the company are carried on. But the company, by their writ of *certiorari*, appeal from this assessment, and ask to have it set aside, on the ground that Jersey City has no right to tax them at all.

The same section in the act of 1854, which directs that the personal property of corporations shall be assessed where their principal office shall be, or if they have none, then where the operations of the company are carried on, proceeds further to enact, that where the tolls of any bridge, turnpike, railroad, or canal company are collected in the several townships or wards, the personal estate of such company shall be assessed in the township or ward in which the treasurer or other officer authorized to discharge the general pecuniary obligations of said company resides.

All the tolls of this road, as we have seen, are collected in other townships than Jersey City. By the charter, all the toll gates are to be elsewhere, and the treasurer of the company resides in Bergen. If then, this road can be considered a turnpike road, I think, under the provisions of the act of 1854, last referred to, this company cannot be taxed in Jersey City, but must be taxed in Bergen township, where its treasurer resides. It is a matter of much importance to the company whether they are taxed in the one place or the other.

Is, then, this road a turnpike road, and is this company in fact a turnpike company, within the meaning of the act? The act only mentions by name, bridge, turnpike, railroad, and canal companies. The companies in the state usually known as plank road companies are not mentioned by that name, although this and other companies of the kind existed at the time of the passage of the law, and were well known as toll taking companies. It would seem, therefore, that the legislature either intended to except them from all toll receiving companies, or to class them under the denomination of turnpike company. A turnpike company is one that owns, and receives tolls on a turnpike road. Why is a road

State v. Haight.

termed a *turnpike* road? Not because of its form, or of the material of which it is composed, but because of the form and character of the gates placed on the road to obstruct the passage of travellers, until they have paid the tolls always collected on such roads. The word turnpike does not mean road, but it means gate, such as are used to throw across the road, to obstruct travellers' carriages and the like, until the tolls are collected. This is the definition of the word given by Webster, Richardson, and Worcester.

The charters usually granted to what are commonly termed turnpike companies and those granted to plank road companies, with regard to their duties, powers, and privileges, are substantially the same. Their right to erect gates and receive tolls is precisely the same, as is also the mode of using them. The only perceptible difference between the two, is the material of which the surface is usually composed. But it is believed that, whether the surface be earth or stone, or gravel or wood, if they are constructed by a private company under public authority, dedicated to public travel, with gates erected thereon and tolls collected, as a condition of such travel, such companies are turnpike companies, whether the surface of the road be earth, gravel, stone, or wood. The only difference between the road in question and what are generally known as turnpike roads being, that it has wood for its surface, instead of earth or gravel. I think it falls legitimately under the designation of a turnpike road, and the company owning it may properly be termed a turnpike company, and that the legislature intended so to treat them in the act, directing the manner and place where such companies should be assessed.

The road under consideration, then, lying in different townships or wards, with all its gates erected, and all its tolls collected, as by the charter they are required to be, outside of Jersey City, and as the treasurer and secretary of the company reside in the township of Bergen, I think that is the place, and the only place where the company can be legally taxed. If the evidence were sufficient to justify us

in concluding that the principal office of this company is in Jersey City, I would hold that to be the place where its personal property should be taxed : or if there were no provision in the statute for taxing this kind of corporation, where no principal office could be readily found, so that such company might avoid taxation altogether, I should be much inclined to hold very slight evidence of the existence of a principal office, sufficient to fix the place of taxation. But as no such necessity exists in this case, and as the law has made provision for assessing this class of corporations, the operations of which are carried on in different townships or wards, where no principal office exists in the township where the treasurer resides, I think we are bound to adopt these provisions in the case before us, especially as I find no evidence of the existence of an office in Jersey City any more entitled to be called their principal office, nor so much so as their several toll houses, where they have always officers stationed, and where all their moneys are collected. I think, therefore, that this assessment by Jersey City should be set aside.

Assessment set aside.